## Hensley v. Prudential Ins. Co. of America.

Jan. 28, 1944.

Turner & Turner for appellant.

Wheeler & Shelbourne for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE FULTON— Affirming.

In August 1937 The Prudential issued to the appellant a policy of life insurance in the amount of $500, containing a provision for payment of double indemnity in case of accidental death. In April 1940 the appellant sustained an accidental injury resulting in the loss of sight in one of his eyes.

The petition in this action, after alleging these facts, further alleged that at the time the policy was issued the company's agent represented to the appellant that it provided for the payment of $500 in case of the loss of an eye by accident and that the appellant would not have accepted the policy and paid the premium if he had known it did not contain this provision; that he was an illiterate man, unable to read or write, and be-

lieved at the time of the delivery of the policy that it contained this provision, and that he did not know until after his accident that the provision was omitted. Reformation of the policy in accord with the alleged agreement was sought and judgment was prayed for the principal sum of the policy. After hearing evidence on the question of reformation the chancellor refused to reform the policy and dismissed the petition. The appeal is from that judgment.

The appellant and his wife both testified that they were unable to read and write; that the appellant had an industrial policy with The Prudential and that the agent, who came to collect premiums, persuaded the appellant to take out the policy in question by assuring him that it would pay $500 in case of accidental loss of an eye, a leg, or an arm, and that he would not have taken the insurance but for his belief that this was true. Mrs. Hensley also testified that the company's Assistant Superintendent stated to her a few days after the policy was issued that "if anything happened, an accident, you would get $500.00." A friend of the appellant testified that some time after the policy was issued the agent was at the appellant's home talking about the policy, in an effort to get the witness to take out a similar policy, and said that it paid $500 "for a hand, a foot, or an eye, and so much for accidental death."

The agent testified that The Prudential did not write health and accident insurance, that he did not make the representation that the policy paid $500 in case of the loss of an eye, an arm, or a leg, and that the only statement made by him with reference to accidental injury was that the policy paid double indemnity for accidental death.

We think the court correctly refused a reformation of the policy on this evidence. To justify reformation of a written instrument the evidence must be clear, strong and convincing, or, as sometimes said, "full, clear and decisive." As said in Royer Wheel Co. v. Miller, 50 S. W. 62, 20 Ky. Law Rep. 1831, and many times approved, "Mere preponderance of evidence is not enough; the mistake (or other ground) must appear beyond reasonable controversy." See, also, McNabb v. Southeastern Gas Co., 268 Ky. 532, 105 S. W. (2d) 622 and cases therein cited.

The mere numerical superiority of three to one in witnesses is not determinative and does not of itself so weight the evidence as to make it clear, strong and convincing and establish that the appellant's ground of reformation was proven beyond reasonable controversy. The witnesses were testifying merely from recollection as to statements made by the agent almost five years prior to the giving of their testimony. If their testimony is true, the agent was guilty of a positive and actual fraud since his company did not write accident insurance. It is probable that after a lapse of some years the appellant and his wife might easily have become confused as to the meaning and effect of the admitted statement of the agent that double indemnity was payable in case of accidental death.

After due consideration of all the evidence, we are left with no feeling of certainty or conviction that the agent made the representation attributed to him—the most we can say is that our minds are left somewhat in doubt on this issue. This being true, the evidence is clearly not sufficient to justify a reformation. The chancellor was correct in so deciding.

Affirmed.